**▯ORIGINAL**

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ APR - 1 2016 ★

BROOKLYN OFFICE

IN THE UNITED STATES DISTRICT COURT
Eastern District of New York

)
)
*CHARLES CARNEGLIA* )  Docket No. _to be supplied by the Clerk_
)  **CV 16 663 1**
)
)
)
_____ )
Plaintiff/Petitioner(s). )  □  **CIVIL RIGHTS COMPLAINT**
)     pursuant to 42 U.S.C. §1983
)     (State Prisoner)
)
-vs- )  ☒  **CIVIL RIGHTS COMPLAINT**
)     pursuant to 28 U.S.C. §1331     **MAUSKOPF, J.**
*LORETTA LYNCH, U.S.* )     (Federal Prisoner)
*Attorney General; Evan* )
*Norris Assist. U.S. Attorney;* )  □  **CIVIL COMPLAINT**     **REYES, M.J.**
*Hon. Judge Jack Weinstein* )     pursuant to the Federal Tort Claims
)     Act, 28 U.S.C. §1346, 2671-2680
Defendant/Respondent(s). )

## I.  JURISDICTION

A.  Plaintiff's mailing address and/or register number and present place of confinement.

_Reg. # 08773-016, U.S.P. Canaan_
_P.O. Box 300 Waymart PA, 18472_

B.  Defendant _Judge Jack Weinstein_ is employed as
(Name of First Defendant)

_United States District Judge_
(Position/Title)

with _U.S. Dist. Court, Eastern Dist. of New York_
(Employer's Name and Address)

_271 Cadman Plaza East, Brooklyn New York 11201_

At the time the claim(s) alleged in this complaint arose, was the defendant employed by the state, local or federal government?     Yes ☒     No ( )

If your answer is "yes", briefly explain:

_U.S. dist. Ct. Judge_

Rev. 5/08

C.   Defendant _Evan Norris_____ is employed as
(Name of Second Defendant)
_Assistant United States Attorney_____
(Position/Title)

with _U.S. Dist Ct., Eastern Dist. of New York___
(Employer's Name and Address)
_271 Cadman Plaza East, Brooklyn, New York 11201_

At the time the claim(s) alleged in this complaint arose, was the defendant employed by the
state, local or federal government?

            Yes (X)        No ( )

If your answer is "yes", briefly explain: _United States ( USA) prosecuting_
_attorney_____

D.   Using the outline of the form provided, include the above information for any additional
defendant(s). _Loretta Lynch, United States Attorney_
_271 Cadman Plaza East, Brooklyn N.Y. 11201_
_____
_____
_____
_____

## II.   PREVIOUS LAWSUITS

A.   Have you begun any other lawsuits in state or federal court relating to your imprisonment?

            Yes ( )        No (X)

B.   If your answer to "A" is "yes", describe the lawsuit(s) in the space below.  (If there is more
than one (1) lawsuit, you must describe the additional lawsuits on another sheet of paper,
using the same outline.)  **Failure to comply with this provision may result in summary
denial of your complaint.** _N/A_____
_____
_____
_____
_____

- 2 -



1.   Parties to previous lawsuits:
     Plaintiff(s) _____ N/A _____

     Defendant(s) _____ N/A _____

2.   Court (if Federal Court, name the District; if State Court, name the County)

3.   Docket number _____

4.   Name of Judge to whom case was assigned _____

5.   Type of case (for example: Was it a Habeas Corpus or Civil Rights action?)

6.   Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?)

7.   Approximate date of filing lawsuit _____ N/A _____

8.   Approximate date of disposition _____

III   **GRIEVANCE PROCEDURE**

A.   Is there a prisoner grievance procedure in the institution? ___ N/A ___

B.   Did you present the facts relating to your complaint in the prisoner grievance procedure? Yes ( ) No ( )

C.   If your answer is "yes",
     1.   What steps did you take? _____

     2.   What was the result? _____

D.   If your answer is "no", explain why not. ___ N/A ___

Rev. 2/02

E.   If there is no prisoner grievance procedure in the institution, did you complaint to prison authorities?  Yes ( )   No ( )

F.   If your answer is "yes",

1.   What steps did you take? _____

_____

2.   What was the result? _____

_____

G.   If your answer is "no", explain why not. _____

_____

_____

H.   Attach copies of your request for an administrative remedy and the response(s) you received. If you cannot do so, explain why not. _____

_____

## IV.   STATEMENT OF CLAIM

State here, as briefly as possible, the FACTS of your case.  State who, what, when, where and how you feel your constitutional rights were violated.  Do not cite cases or statutes.  If you choose to submit legal arguments or citations, you must do so in a separate memorandum of law.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  If your claims relate to prison disciplinary proceedings, **attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits.**

**Only two (2) extra pages (8½ x 11") are permitted, if necessary, to complete your statement of claim.**  Additionally, attach any relevant, supporting documentation.

CONTINUED

See ATTACHED

- 4 -

Rev. 3/00

IV.  STATEMENT OF CLAIM

Petitioner Charles Carneglia claims that Judge Jack Weinstein and Assistant U.S Attorney Mr.Evan Norris refused to provide the specific Grand Jury evidence necessary to prevent an injustice in violation of those Constitutional rights guaranteed under the Due Process Clause and the Fifth Amendment's Grand Jury Clause.

Judge Jack Weinstein denied Petitioner's"Motion to Compell"the government to produce specific Grand Jury material. Petitioner had sought the specific evidence relied upon by the Grand Jury to extend the Extortion Conspiracy of John Doe # 1 as charged in Racketeeing Act Eight of the original indictment.

Petitioner has claimed within a second Motion to Compell (pending before the appellate court) that the government led by United States Attorney General Loretta Lynch and Assistant U.S Attorney Mr.Evan Norris in prosecuting Mr.Carneglia,knowingly, intentionally and maliciously sought the Third Superseding Indictment to purposely derail defendant's counsel from challenging the validity of the original indictment.

The actions of Mr.Evan Norris and the prosecution clearly demonstrates a malicious intent to save count one of the indictment. The Grand Jury returned a superseding indictment on May 16, 2008 and a Second Superseding Indictment on July 24, 2008 while the charges against Charles Carneglia remained the same. However, following the defendant's counsel filing of"Motion to Dismiss Indictment"(08/12/2008) upon the grounds that the institutién of charges against him were in violation of his Due Process rights because the government failed to institute charges within the five-year statute of limitations prescribed by

18 U.S.C.§3282 (see attached Exh.'A'), a Third Superseding Indictment was delivered by the Grand Jury. The only relevant and significant change or amendment to the original indictment pertaining to Count One against Mr.Carneglia was the ending date of the extortion conspiracy of John Doe#1 (Mr.Hunter Adams) charged in Racketeering Act Eight changed from January 2003 to May 2005 to bring Count One and all nine (9) Racketeering acts within the statute of limitations.

Where the Honorable Judge Jack Weinstein and Assistant U.S attorney Evan Norris deliberately and intentionally denied Petitioner access to the Grand Jury evidence necessary to pursue collateral review or Civil complaint pursuant to 42 U.S.C.§ 1983.

MARch, 28, 2016

Res. CARNEGLIA CHARLAS
Charles Carneglia
Reg.# 08773-016
U.S.P. CANAAN
P.O. Box 300
Waymart, PA. 18472

6,

CERTIFICATE OF SERVICE

I Charles Carneglia, hereby certify under penalty of purjury, that on the 28th day of March, 2016, I deposited one (1) original copy of "Civil Rights Complaint" into the Mail-Room at United States Penitentiary in Canaan, postage paid and addressed to:

Attn: Clerk
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

I Charles Carneglia hereby declare the foregoing to be true and correct.

Dated: March 28, 2016

Res Carneglia Charles
Charles Carneglia
Reg. # 08773-016
U.S.P. Canaan
P.O. Box 300
Waymart PA. 18472

7.

Exhibit 'A'

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

        **08 CR 76 (JBW)**

   -against-

CHARLES CARNEGLIA,

        **MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO
DISMISS INDICTMENT ON
DUE PROCESS GROUNDS**

           Defendant.
------------------------------------------------------X

## PROCEDURAL HISTORY

1. This Memorandum of Law is submitted on behalf of the defendant, CHARLES
   CARNEGLIA, in support of his motion for a dismissal of the indictment upon the
   grounds that the institution of charges against him was in violation of his due
   process rights afforded by the Fifth Amendment of the Constitution of the United
   States, and for an Order directing the government to provide pedigree information
   of the confidential informants.

2. The Court is respectfully referred to the annexed affirmation of Curtis J. Farber,
   Esq., and the affidavit of Charles Carneglia in regard to the statement of facts of
   the case and its procedural history.

## POINT ONE

### THE CHARGES ENUMERATED IN THE INDICTMENT WERE INSTITUTED IN VIOLATION OF CHARLES CARNEGLIA'S DUE PROCESS RIGHTS

3. Charles Carneglia is charged under Count One of the most recent superseding
   indictment of participating in a Racketeering Conspiracy.   This conspiracy is

1

alleged to have existed between February 1975 and February 2008.   In furtherance of the charged conspiracy, Mr. Carneglia is accused of nine distinct "RICO" acts:

a.  Murder Conspiracy/Murder of Albert Gelb on or about March 11, 1976 (Racketeering Act One);

b.  Murder of Michael Cotillo on or about November 6, 1977 (Racketeering Act Two);

c.  Murder of Salvatore Puma on or about July 29, 1983 (Racketeering Act Three);

d.  Marijuana Distribution Conspiracy between June 1988 and December 1990 (Racketeering Act Four)

e.  Murder Conspiracy/Murder of Louis DiBono on or about October 4, 1990 (Racketeering Act Five);

f.  Robbery Conspiracy/Robbery/Felony Murder of Jose Delgado Rivera on or about and between January 1, 1990 and December 14, 1990 (Racketeering Act -Six);

g.  Extortion Conspiracy/Extortion of John Doe #1 on and about and between January 1991 and January 2003 (Racketeering Act Seven);

h.  Securities Fraud Conspiracy on or about and between January 1995 and December 1996 (Racketeering Act-Nine);

i.  Robbery Conspiracy/Robbery on or about and between October 1, 1995 and November 5, 1995 (Racketeering Act Ten)

2

4. These acts that Mr. Carneglia must defend against span a time period of over three decades. Racketeering Acts One and Two are alleged to have transpired more than thirty years ago, Racketeering Act Three is said to have occurred twenty-five years ago, and the remaining charged Racketeering Acts alleged to have occurred between eight and twenty years ago.

5. Through the use of the "Racketeer Influenced and Corrupt Organization" (RICO) laws, the government argues that the instant indictment is timely. As more fully discussed herein, the defendant disagrees. Assuming, *arguendo*, however that government is correct with respect to its statute of limitations position, Mr. Carneglia submits that the pre-indictment delay that has transpired here violates his due process rights guaranteed by the Fifth Amendment to the Constitution of the United States. This Amendment provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

6. An indictment brought within the time constraints of the statute of limitations violates the Due Process Clause of the Fifth Amendment to the Constitution of the United States where pre-indictment delay has caused "substantial prejudice" to the defendant's ability to present a defense, and "the delay was an intentional device to gain a tactical advantage over an accused." *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455 (1971); *United States v. Cornielle*, 171 F.3d 748 (2d

3

Cir. 1999). As the Supreme Court further explained, where delay prejudices the presentation of a defense and is engaged for an improper purpose it violates the Due Process Clause because such conduct departs from the fundamental notions of "fair play." *United States v. Lovasco*, 431 U.S. 783 (1977).

7. A defendant moving to dismiss an indictment on such due process grounds bears the heavy burden of proving both that he suffered actual prejudice because of the alleged pre-indictment delay, and that such delay was a course intentionally pursued by the government for an improper purpose. *United States v. Alameh*, 341 F.3d 167 (2d Cir. 2003); *United States v. Birney*, 686 F.2d 102 (2d Cir. 1982); *United States v. Scala*, 388 F. Supp.2d 396, (SDNY 2005). Prejudice in this context has been interpreted to mean that sort of deprivation that impairs a defendant's right to a fair trial. *United States v. Elsbery*, 602 F.2d 1054 (2d Cir. 1979). Examples of such prejudice include the loss of testimony of material witnesses, dimming of memories and/or evidence is lost. *United States v. Lovasco*, supra; *United States v. Lai Ming Tanu*, 589 F.2d 82 (2d Cir. 1978)

8. The pre-indictment delay in this cases prejudices Mr. Carneglia's ability to mount a defense with respect to each and every RICO predicate act. Specifically, Mr. Carneglia has been prejudiced as follows:

   a. Racketeering Act One

      i. Loss of key witnesses, who did observe (either visually or audibly) the events charged, including Charles Ball, deceased, whose description of Mr. Gelb's assailant did not match Mr. Carngelia's physical description;

4

    ii.  Loss of police investigative notes;

    iii.  Loss of investigative officers who conducted witness interviews, investigations and/or prepared reports;

    iv.  Loss of notes and records concerning other suspects;

    v.  Loss of information concerning victim;

    vi.  Loss of physical evidence;

    vii.  Death of Herbert Lyons, Esq., Mr. Carneglia's attorney at the time of the charged act, who had direct knowledge of the allegations and who had arranged for and/or had undertaken an investigation, the results of which are now lost;

    viii.  Loss of the notes of statements made by Mr. Carneglia to his attorney Herbert Lyons, Esq., close in time to the incident;

    ix.  Loss of polygraph exam results;

    x.  Dimmed memory of witnesses;

  b.  <u>Racketeering Act Two</u>

    i.  Loss of eyewitnesses, including Peter LNU a/k/a "Flip" (now deceased), and "Bonnie LNU"(now deceased), both of whom their last names are now lost to Mr. Carneglia due to the passage of time, together with any defenses that may have been corroborated by their observations;

    ii.  Loss of police investigative notes;

    iii.  Loss of investigative officers who conducted witness interviews, investigations and/or prepared reports;

    iv. Loss of notes and records concerning other suspects;

    v. Loss of information concerning victim;

    vi. Loss of physical evidence;

    vii. Dimmed memory of witnesses;

c. <u>Racketeering Act Three</u>

    i. Loss of defense witnesses, including, but not limited to Mickey Timbura, Angelo Ruggiero, Sr. and Jacqueline Carr (all deceased);

    ii. Loss of police investigative notes;

    iii. Loss of investigative officers who conducted witness interviews, investigations and/or prepared reports;

    iv. Loss of notes and records concerning other suspects;

    v. Loss of information concerning victim;

    vi. Loss of physical evidence;

    vii. Dimmed memory of witnesses;

d. <u>Racketeering Act Four</u>

    i. Dimmed memory of witnesses;

e. <u>Racketeering Act Five</u>

    i. Loss of key witnesses, including, but not limited to, Bartholomew "Bobby" Borriello;

    ii. Loss of police investigative notes;

    iii. Loss of investigative officers who conducted witness interviews, investigations and/or prepared reports;

    iv.  Loss of surveillance video tapes from World Trade Center parking garage and or surrounding area;

    v.  Loss of notes and records concerning other suspects;

    vi.  Loss of physical evidence;

    vii.  Dimmed memory of witnesses;

f.  <u>Racketeering Act Six</u>

    i.  Loss of defense witnesses, including, but not limited to, Collen Manza (deceased) and any observing witnesses (those who actually observed (either visually or audibly) the events charged;

    ii.  Loss of police investigative notes;

    iii.  Loss of investigative officers who conducted witness interviews, investigations and/or prepared reports;

    iv.  Loss of notes and records concerning other suspects;

    v.  Loss of information concerning victim;

    vi.  Loss of physical evidence;

    vii.  Dimmed memory of witnesses;

g.  <u>Racketeering Act Seven</u>

    i.  Dimmed memory of witnesses;

h.  <u>Racketeering Act Nine</u>

    i.  Loss of police investigative notes;

    ii.  Loss of investigative officers who conducted witness interviews, investigations and/or prepared reports;

    iii.  Loss of physical evidence;

    iv. Dimmed memory of witnesses;

  i.   Racketeering Act Ten

    i.   Loss of eyewitnesses;

    ii.   Loss of police investigative notes;

    iii. Loss of investigative officers who conducted witness interviews, investigations and/or prepared reports;

    iv. Loss of notes and records concerning other suspects;

    v.   Loss of information concerning victim;

    vi. Loss of physical evidence;

    vii. Dimmed memory of witnesses;

9. The prejudice inured to Mr. Carneglia due to pre-indictment delay is not merely speculative. As demonstrated above, he suffers actual and specific harm in defending against each and every predicate act allegedly committed in further of the Racketeering Conspiracy. Key witnesses are no longer available. The memories of those that remain have long since dimmed. Additionally, investigative notes and records are missing. The net result of this lost evidence is that actual defenses can no longer be established and/or corroborated. As such, Mr. Carneglia cannot receive a fair trial. Due process dictates that instant indictment be dismissed.

10. The government cannot defend against this motion by asserting there was a proper basis for the delay. Indeed, the government can offer no legitimate basis upon which it delayed pursuing criminal charges against Mr. Carneglia. The government, as demonstrated by its past prosecutions of Mr. Carneglia, has long

believed him to be a member of the Gambino organized crime family of La Cosa Nostra. Additionally, based upon governmental investigations and other sources of information, including, but not limited to cooperating witnesses, the government has long suspected Mr. Carneglia's involvement in the Racketeering Conspiracy, and specifically having committed the enumerated predicate acts. For example, the FCI McKean tape recording in which the government argues Mr. Carneglia implicated himself in the murder of Michael Cotillo, has been in the government's possession since 1999. Further, government witnesses testified as to Mr. Carneglia's direct involvement in the murder of Albert Gelb (*United States v. Gotti et al.* 85 Cr. 178))(trial held in 1986); the murder of Louis DiBono (*United States v. Gotti et al.* 90 Cr. 1051)(trial held in 1992) and (*United States v. Conte et al.* 93 Cr. 85) (trial held in 1993); the robbery of the Papavaro Funeral Home (*United States v. Ronald Trucchio et al.*, 04 Cr. 348) (trial held 2006) and marijuana distribution conspiracy (*United States v. Pizzonia et al.*, 05 Cr. 425 (trial held 2007).

11. The government's ability to prosecute Mr. Carneglia is the same now as it was years ago when the offenses were allegedly perpetrated. No new physical evidence has been discovered. No new witnesses have surfaced. It would be disingenuous for the government to argue that delay herein was caused by an on-going investigation and the need of the prosecution to obtain sufficient evidence upon which to prosecute. *United States v. Rubin*, 609 F.2d 51 (2d Cir. 1979)

12. Further, as demonstrated by the fact that Mr. Carneglia is charged alone in the predicate acts, the government cannot claim that the pre-indictment delay was

caused by the need to build a case against a related co-defendant. *United States v. Lovasco, supra.*

13. Should a claim of "investigative delay" be advanced, this Court should take note that while the Supreme Court has held an investigative delay would not necessarily raise to the level of a due process violation where a defendant is "somewhat prejudiced by the lapse of time", it reiterated its previous holding given in *United States v. Marion*, supra., that it could not determine in the abstract the circumstances in which pre-accusation delay would require dismissal. It therefore ruled that it was the province of the lower courts in the first instance to decide. *United States v. Lovasco*, supra. at797-797

14. This is not a case where a defendant is "somewhat prejudiced". Rather, Charles Carneglia's ability to mount a defense is gravely and irreparably prejudiced. Accordingly, this Court has the authority, indeed it can be argued has the obligation, in the interests and in the furtherance of justice to find a due process violation.

15. It is respectfully submitted that the sole purpose in bringing the charges against Charles Carneglia at this late juncture was a last ditch effort to "pin" something on him by joining him in a case with sixty-one other individuals. It was the government's hope that by placing him in such a large and sweeping "takedown" of purported organized crime members, the publicity generated by this event, coupled with the "spill-over effect" that would naturally flow from joining so many defendants together, would lead to a successful prosecution. Such a tactic is exactly what the courts have repeatedly held rises to a level of due process

violation. *See United States v. Lovasco*, supra.;   *United States  v. Ruggiero*, 726 F.2d 913 (2nd Cir. 1984), abrogated on other grounds *Salinas v. United States*, 522 U.S. 52 (1997); *United States v. Culligan*, 2007 WL 3232484 (WDNY November 1, 2007)

11

## POINT TWO

### THE CHARGES SHOULD BE DISMISSED BECAUSE THE DO NOT SATISFY THE PATTERN ELEMENT FOR A RICO CONSPIRACY CHARGE

17. The defendant additionally moves to dismiss the instant indictment upon the grounds that it fails to properly plead the elements of the charged offense. In its present form, Mr. Carneglia has been denied proper notice of the elements of the charges pending against him as required by the Fifth and Sixth Amendments to the Constitution of the United States. The failure to provide adequate notice of the pending charges prevents Mr. Carneglia from being properly prepared to meet the charges against him and defend against the risk of double jeopardy. *United States v. Bailey*, 444 U.S. 394, 414, 100S.Ct. 624, 636 (1980); *Jones v. United States*, 526 U.S. 227, 232 119 S.Ct. 1215, 1219 (1999); *Russell v. United States*, 369 U.S. 749, 760-61 (1962).

18. The terms "enterprise" and "pattern of racketeering activity" are defined in 18 U.S.C. §1961. This statute provides that an enterprise includes any "... individuals associated in fact although not a legal entity". "[P]attern of racketeering activity" is satisfied by two acts of racketeering activity, one occurring after the statute was enacted and the last which occurred within ten years (excluding periods of imprisonment) after the commission of a prior act of racketeering activity. Reviewing Courts have directed that a "natural and commonsense approach" is required when assessing the elements of a RICO violation. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237, 109 S.Ct. 2893, 2900 (1989). The Supreme Court has stated that "it is not the number of

12

predicates that determines whether they satisfy the requirement for a pattern of racketeering activity but it is the relationship that they bear to each other or to some external organizing principle." *H.J. Inc.*, 492 U.S. at 238.  Further, the Supreme Court instructs that it is the factors of continuity plus relationship, which together, may produce a pattern as defined in the statute.

19. In assessing whether the continuity factor has been met. "a party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time" or by evidence that "includes a specific threat of repetition extending indefinitely into the future." *H.J. Inc.* at 242.  "Related Acts" as used in the RICO statute "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.* at 240.  In evaluating whether the pattern element is plead correctly a district court must determine whether the racketeering acts are related to each other (horizontal relatedness) and are similarly related to the enterprise (vertical relatedness.) *See United States v. Minicone*, 960 F.2d 1099, 1106 (2d Cir. 1992), *United States v. Long*, 917 F.2d 691, 697 (2d Cir. 1990).

20. Horizontal relatedness is satisfied when the pattern acts are related to each other and they are a threat or pose a threat of continuing criminal activity.  Vertical relatedness can be proven by showing that either the offense related to the activities of the enterprise, or that the defendant was able to commit the offense because of his position in the enterprise. *United States v. Bruno*, 383 F.3d 65, 84 (2d Cir. 2004)  In the instant case, as applied to Charles Carneglia, none of the

13

requirements described above have been met and the indictment must be dismissed.

21. In this prosecution Charles Carneglia is characterized as being at "various times relevant to this indictment...a soldier or associate" of the Gambino organized crime family of La Cosa Nostra, whose primary purpose was to "...generate money for its members." (Ind. paragraphs 9 & 13). It is alleged that he was an "associate" and/or "soldier" in the Gambino family. Count One does not charge that any of the enumerated racketeering acts are related to each other (horizontal relatedness) or to the Enterprise (vertical relatedness). Accordingly, there is no fulfillment of the pattern act requirement. The allegations are hackneyed, individual acts, trotted out and cobbled together to form the basis of this indictment.

22. Racketeering Act One states that from February 10, 1975 to March 11, 1976, the defendant conspired to cause the death of Albert Gelb, and that on March 11, 1976 the defendant, together with others, caused his death. Racketeering Acts Two (November 6, 1977 - Murder of Michael Cotillo) and Racketeering Act Three (July 29, 1983 - Murder of Salvatore Puma) are charged as singular and discrete intentional murders tracking the statutory language in New York Penal Law sections 125.25(1) and 20.00. Nothing in the indictment notices the defense of the relatedness of these offenses to each other or to the enterprise.

23. Racketeering Act Four charges Mr. Carneglia with conspiring with others to distribute marijuana between June 1988 and December 1990 in violation of 21 USC §§ 841 (a)(1) and 846. This Racketeering Act mirrors the defects in

14

Racketeering Acts One through Three in that it fails to allege the relatedness of the offenses to each other or to the enterprise.

24. Racketeering Act Five (September 1, 1990 - October 4, 1990 Conspiracy and Murder of Louis DiBono) and Racketeering Act Six (January 1, 1990 - December 14, 1990, Robbery Conspiracy/Robbery/Felony Murder of Delgado Rivera) are charged as separate conspiracies that culminate in murder. The Government has not included in its pleadings or provided an answer to discovery requests how these disparate, singular acts can or do relate to the other offenses charged or to the charged enterprise and therefore must be dismissed.

25. Racketeering Act Seven charges a conspiracy to extort and the extortion of money from John Doe #1 from January 1991 to January 1993. Again, the Government fails to allege that this offense is either related to the other Racketeering Acts charged, or to the enterprise.

26. Similarly the government neglects to allege how the two final charged racketeering acts, Racketeering Act Nine (January 1995 - December 1996, Securities Fraud Conspiracy) alleging a conspiracy between Mr. Carneglia and others to manipulate the sale of securities of Ashton Technology Group Inc. and Mama Tish's Italian Specialties, Inc., in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 and Racketeering Act Ten (October 1, 1995 – November 5, 1995, Robbery Conspiracy) alleging a conspiracy between Mr. Carneglia and others to rob the Papavero Funeral Home, are either related to the other charged racketeering acts, or to the enterprise.

15

27. The Government must not be permitted to proceed with this prosecution when they are unable to substantiate how the charged racketeering acts have the same or similar purposes, results, participants, victims, or methods of commission or are interrelated by distinguishing characteristics. These allegations, if proven, while indicative of a criminality, are isolated events that are unrelated to each other and cannot be established as intended to further the affairs of any enterprise. *See H.J. Inc.*, 492 U.S. at 242; *Bruno*, 383 F. 3d at 65.

16

**POINT THREE**

<u>THE INDICTMENT MUST BE DISMISSED BECAUSE THE GOVERNMENT
FAILED TO INSTITUTE  CHARGES WITHIN THE FIVE YEAR
STATUTE OF LIMITATIONS PRESCRIBED BY 18 U.S.C. § 3282</u>

28. Should the motion dismiss the indictment on the grounds that it does not satisfy
the pattern element for a RICO conspiracy charge fail the indictment should be
dismissed for failure to comport with the Five Year Statute of Limitations in 18
U.S.C. 3282.

29. As will be established at trial, while the existence of "LCN" may very well have
continued to the date of the indictment, Charles Carneglia, to the extent he had
associated with members of the Gambino "family" and thus the government
argues he participated in the charged conspiracy, had withdrawn from said
conspiracy on or about November, 2001.    The withdrawal was effectively
communicated to his alleged co-conspirators, both by deed and by word.

30. In *Hyde v. United States*, 225 U.S.347 (1912), the United States Supreme Court
set forth a comprehensive test to assess whether one had withdrawn from a
conspiracy, a test that remains the rule to this date.   This test prescribes once an
individual joins an unlawful scheme, until he does some act to disavow or defeat
the purpose of the conspiracy, a claim of withdrawal cannot stand, and he in no
situation can advance a claim of delay of law. *United States v. Borelli*, 336 F.2d
376 (2d Cir. 1964).  In seeking to establish withdrawal, a defendant has the
burden of showing that he undertook some act that affirmatively established that
he disavowed his criminal association with the conspiracy and that he

17

communicated his withdrawal to the co-conspirators. *United States v. Flaharty*, 295 F.3d 182 (2d Cir. 2002); *United States v. Eisten*, 974 F.2d 246 (2d Cir. 1992); *United States v. Nerlinger*, 862 F.2d 967(2d Cir. 1988). "The point of such "affirmative evidence" requirements, though, is not to compel a conspirator to inform of his or her co-conspirators or to warn off possible victims, admirable as those actions may be. It is rather to make sure that a withdrawal did occur and is not simply being invented ex post". *United States v. Greenfield*, 44 F.3d1141(2d Cir. 1995)

31. While the government is free to argue that the conspiracy contemplates a continuity of purpose and performance of acts, it will be hard pressed to show that Mr. Carneglia remained a member of the conspiracy, let alone performed any act its furtherance, after November, 2001. Indeed, the evidence will show that not only did Mr. Carneglia abandon any affiliation with the Gambino family, he was similarly pushed aside by his alleged co-conspirators. Under the Second Circuit's current precedents concerning RICO statute of limitation issues, the instant prosecution is untimely. See *United States v. Spero*, 331 F.3d 57 (2d Cir. 2003); *United States v. Salerno*, 868 F.2d 524 (2d Cir. 1989); *United States v. Persico*, 832 F.2d 705 (2d Cir. 1987)

32. For the reasons stated in this motion, the Court should find that Charles Carneglia effectively withdrew from the charged conspiracy in November 2001, approximately six and one quarter years prior to the filing of the instant indictment, and thus falls outside the dictates of 18 U.S.C. § 3282. Further, the indictment is not saved by allegation of a Racketeering Act performed within the

five-year statute of limitations because the most recently charged act, Racketeering Act Seven, is alleged to have occurred between January 1991 and January 2003. As acknowledged in the instant indictment, Racketeering Act Seven was completed in January 2003, and thus, the statute of limitations had run by the time the indictment was filed on February 6, 2008. In short, Count One of the indictment must be dismissed against Charles Carneglia because it fails to allege that he committed or agreed to commit a predicate act within the five-year limitation period, and he had previously withdrawn from the charged enterprise.

## POINT FOUR

## ALL PRE-MIRANDA STATEMENTS WERE INVOLUNTARILY MADE
## AND MUST BE SUPPRESSED

33. The right against self-incrimination is embodied in the Fifth Amendment to the
Constitution of the United States of America.    It is well established that
statements procured from an accused without him knowingly and willingly giving
up his Fifth Amendment rights, should be suppressed. *Miranda v Arizona*, 384
U.S. 436 (1966).   The Supreme Court in *Miranda* held that statements made
during a custodial interrogation by a defendant may be admissible solely where
the prosecution can demonstrate that the same were made despite knowledge of
the right to counsel under the Sixth Amendment to the Constitution of the United
States of America.   It is not a matter of whether the statement is inculpatory or
exculpatory.   Rather, what controls is whether an accused was informed of his
right to counsel before being interviewed and knowingly waived such right prior
to speaking to law enforcement agents. *United States v. Szymaniak*, 934 F.2d 434
(2d Cir. 1991)

34. In the case at bar, the government, by discovery letter dated July 18, 2208, disclosed
post-arrest statements attributed to Charles Carneglia. These statements are listed as
"Exhibit # 242" and consist of a two page report on the letter head of "The Port
Authority of NY & NJ" and attributed to Detective John Reilly, Detective Steve
Kaplan and Special Agent John Reynolds.  A copy of this report is annexed hereto
as Exhibit "A".

35. In page one of this report and continuing through the first paragraph of page two, these law enforcement agents candidly acknowledge that Mr. Carneglia was in custody at the time all statements attributed to him were made. Additionally, said agents noted that they at first engaged Mr. Carneglia in small talk, and then proceeded to ask him direct questions which were designed to elicit a response. All these questions posed were pre-*Miranda*. It was only subsequent to the question and answers listed above that Mr. Carneglia was advised of his *Miranda* rights. Thereafter, as reflected in page two of their report, the agents note that additional statements attributed to Mr. Carngelia were purportedly given.

36. The defense moves to suppress all "pre-Miranda" statements upon the grounds that they were involuntarily obtained. The law enforcement agents acknowledge that Mr. Carneglia was in custody at the time the statements attributed to him were made. It is clear on the face of the aforementioned two page report that not only the express questions, but the words or actions of the agents were likely to elicit an incriminating response from him. Such statements were obtained before Mr. Carngelia was advised of his rights to remain silent and have counsel. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682 (1980); *Rosa v. McCray*, 396 F.3d 210, 220-21 (2d Cir. 2005); *United States v. Gelzer*, 50 F.3d 1133 (2d Cir. 1995); *United States v. Carmona*, 873 F.2d 569, 573 (2d Cir. 1989).

21

## POINT FIVE

### THE GOVERNMENT SHOULD BE DIRECTED TO PROVIDE PEDIGREE INFORMATION CONCERNING THE CONFIDENTIAL INFORMANTS

37. Where the disclosure of an informant's identity . . . is relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause, the [informant's] privilege must give way." *Roviaro v. United States*, 353 U.S. 53, 67 (1957). In order to prevail on a motion to compel the disclosure of the identity of a confidential informant, a defendant must show that the informant's testimony is material to the defense. *United States v. Saa*, 859 F.2d 1067, 1073 (2nd Cir. 1988), *cert. denied*, 489 U.S. 1089 (1988)). "The defendant is generally able to establish a right to disclosure 'where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence.'" *United States v. Saa*, supra, at 1073); *United States v. Russotti*, 746 F.2d 945, 950 (2d Cir.1984).

38. In the case at bar, as reflected in the detention memorandum filed by the government at the time of Mr. Carneglia's arrest, the great majority of the government's proof that Mr. Carneglia was in fact the perpetrator of the charged crimes, as opposed to proof that said crimes actually occurred, is the testimony of one or more confidential informants. Indeed, other than the cited FCI McKean tapes which purportedly relate to the murder of Michael Cotillo (Racketeering Act Two), the government has no evidence independent from that of the cooperating witness(es) that he perpetrated any of the charged offenses.

22

39. The government has never indicated the circumstances under which the confidential informant(s) decided to provide the government with the information that led to the Indictment here. Furthermore, though the government claims that this/these witness are now and/or have previously provided reliable information, the defense has no way to verify that claim. It is thus of critical importance that the government provide Mr. Carneglia with sufficient information to enable a proper and thorough investigation of each and every confidential informant. Accordingly, Mr. Carneglia seeks an order directing the government to provide the name, date of birth, and current address of each confidential informant.

## CONCLUSION

40. For the foregoing reasons, it is respectfully requested that the Court dismiss all the

charges contained in the indictment as they apply to Charles Carneglia.

DATED: NEW YORK, NEW YORK
      August 12, 2008

Respectfully submitted,

S/
_____

CURTIS J. FARBER, ESQ.
350 Broadway, 10th Floor
New York, New York  10013
(212) 334-4466

S/
_____

KELLEY J. SHARKEY
26 Court St., Suite 2805
Brooklyn, New York  11242
(917) 858-8853

Attorneys for Defendant Charles Carneglia

24